UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES W.  HAWKINS &
LORI JO HAWKINS,

                  Debtors/Appellants,

                  -against-

CHAPTER 11 TRUSTEE,

                  Appellee.

Dist. Ct. Civil Action
6:07-CV-0766 (LEK)

_____

In re:

| | |
|---|---|
| Reserve Capital Corp. | Bankr. Case No. 03-60071 |
| Hawkins Development LLC | Bankr. Case No. 03-60072 |
| James W. & Lori Jo Hawkins | Bankr. Case No. 03-60073 |
| Hawkins Family, LLC | Bankr. Case No. 03-60074 |
| Hawkins Manufactured Housing, Inc. | Bankr. Case No. 03-60075 |
| Forest View, LLC | Bankr. Case No. 03-60076 |
| Wooded Estates, LLC | Bankr. Case No. 03-60077 |
| Tioga Park, LLC | Bankr. Case No. 03-60078 |

                  Debtors.

_____

## DECISION AND ORDER

On July 25, 2007, Appellants James W. Hawkins and Lori Jo Hawkins filed with this

Court an appeal from the Decision and Order of the United States Bankruptcy Court for the

Northern District of New York (Gerling, Chief B.J.), entered on July 6, 2007.   Dkt. No. 1.  For

the reasons stated below, the Bankruptcy Court's July 6, 2007 Order is affirmed.

### I. BACKGROUND

A detailed factual background of the underlying dispute can be found in Reserve Capital

Corp. v. Levine, No. 6:05-CV-00743, 2007 WL 329179 (N.D.N.Y. Jan. 30, 2007), and in the

related Orders of the Bankruptcy Court. A summary of the facts relevant to the present appeal are as follows. Debtors include eight separate entities and individuals who filed Chapter 11 petitions in January 2003. In September 2004, BSB Bank & Trust Company ("BSB"), a secured creditor, assigned the secured portion of its claims to Asolare Corporation ("Asolare"). Asolare later transferred all of its right, title and interest in the September 2004 agreement with BSB to Asolare II, LLC ("Asolare II").

On June 1, 2004, the Bankruptcy Court confirmed the Joint Chapter 11 Plan of Tioga Park, LLC (the "Plan").[1] As is relevant hereto, the Plan provided that the estate of James Hawkins was to receive: (1) 55% of the $100,000 consulting fee due to him under a five-year consulting agreement previously negotiated by the parties; and (2) a 2% equity interest in the post confirmation transferee of the assets of Tioga Park, LLC, the Tioga Downs race track.

In September 2004 the Bankruptcy Court appointed Appellee, Paul Levin, Esq., as the Chapter 11 Trustee, pursuant to 11 U.S.C. § 1104. In November 2004, the Trustee filed a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 to compromise certain terms of the Reserve Capital Chapter 11 settlement. As is relevant to this appeal, the Trustee sought to liquidate two sources of money to help fund the bankruptcy estates: (1) a present value lump sum payment of $250,000 in return for the estate's 55% share of the consulting fee; (2) a payment of $60,000 in exchange for the estates' conveyance of their 2% equity interest in the Tioga Downs race track.

On March 7, 2005 the Bankruptcy Court issued a Decision and Order, holding that the

---

[1] The original Plan was submitted to the Bankruptcy Court on March 10, 2004, and then amended by the Bankruptcy Court in its May 17, 2004 Amending Order. The entire plan was confirmed by the Bankruptcy Court in its June 1, 2004 Order.

Trustee's compromise was fair and reasonable, and allowing the Trustee to enter into the proposed settlements. The Debtors appealed the March 7, 2005 Decision and Order. On January 30, 2007, this Court issued a Decision and Order, <u>Reserve Capital Corp. v. Levine</u>, No. 6:05-CV-00743, 2007 WL 329179 (N.D.N.Y. Jan. 30, 2007), affirming in part but remanding to the Bankruptcy Court the question of whether the March 7, 2005 Decision approving the Trustee's Rule 9019 Motion had constituted an impermissible post-confirmation modification of the Plan.[2]

On July 6, 2007, on remand, the Bankruptcy Court held that the March 2005 Decision did not constitute a post-confirmation modification of the Plan. <u>See</u> Dkt. No. 1, Attach. 3. The Debtors appealed. Accordingly, the only issue presently before the Court is a review of the Bankruptcy Court's March 2005 Decision to determine whether it constituted a post-confirmation modification of the Plan.

## II. STANDARD OF REVIEW

In reviewing the rulings of a bankruptcy court, a district court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact, and reviews *de novo* conclusions of law. <u>Yarinsky v. Saratoga Springs Plastic Surgery</u>, 310 B.R. 493, 498 (N.D.N.Y. 2004) (Hurd, J.) (citing <u>In re Manville Forest Prods. Corp.</u>, 209 F.3d 125, 128 (2d Cir. 2000)); <u>In re Petition of Bd. of Dirs. of Hopewell Int'l Inst. Ltd.</u>, 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002); FED. R. BANKR. P. 8013. Mixed questions of law and fact are reviewed *de novo*. <u>Ernst & Young v. Bankr. Servs. (In re CBI Holding Co.)</u>, 311 B.R. 350, 360 (S.D.N.Y. 2004) (citing to <u>In re Vebeliunas</u>, 332 F.3d 85, 90 (2d Cir. 2003); <u>In re AroChem Corp.</u>, 176 F.3d 610, 620 (2d Cir.

---

[2] This Court also found that the Bankruptcy Court did not abuse its discretion in finding that the proposed compromises contained in the Rule 9019 Motion were fair, reasonable, and in the best interest of the estates.

1999)).

## III. DISCUSSION

On remand, the Court had instructed the Bankruptcy Court to review the terms of the Trustee's Compromise as outlined in the Rule 9019 Motion ("the Compromise") as they compared to the Plan in order to determine whether the Compromise constituted a modification of the Plan.  The Bankruptcy Court reviewed the terms of the Compromise and the Plan and found that the Compromise did not constitute a modification of the Plan, but instead simply carried out the Plan's objectives.  Appellees similarly argue on appeal that the Compromise "simply sought approval of negotiated payouts of monies due under the plan in the precise manner the plan authorized and had left unresolved as to the exact dollar amounts of such payments."  Appellee's Brief at 7 (Dkt. No. 20).  A review of the Plan and terms of the Compromise support this conclusion.

There are two specific provisions at issue.  The first provision dealt with the Bankruptcy Court's approval of the Trustee's request to accept $60,000.00 for the right of the estate to a 2% equity interest in Tioga Downs race track.  The Plan had required that the 2% equity interest "shall be purchased by the post-confirmation transferee at its fair market value . . ., and shall be paid to the Estate . . ."  Bankruptcy Court's May 17, 2004 Amending Order ¶ (D)(2) (Dkt. No. 16, Attach. 2, Exh. A).  The Compromise had proposed "to accept $60,000 for all of the estates' [sic] right, title and interest in and to such equity."  Trustee's Rule 9019 Motion ¶ 49 (Dkt. No. 16, Attach. 2).  Since the Bankruptcy Court had found that the proposed compromise amount was fair, and that finding of fact was not clearly erroneous, as previously affirmed by this Court in Case No. 6:05-cv-00743, the Compromise merely effectuated the Plan's requirement that the 2%

equity interest be purchased at its fair market value.

In regards to the $100,000 consulting fee, the Bankruptcy Court's Confirmation Order had required that 45% be paid to James Hawkins and 55% be paid to the bankruptcy estate, stating that the payment stream to the estate was to be "discounted in accordance with present value and paid or escrowed for distribution on confirmation in such Estate." Amending Order ¶ (D)(1). The Compromise accepted "a lump sum payment of $250,000 in full satisfaction" of "the 55% interest of the estates in the $100,000 annual consultant's fee". Compromise ¶ 48. The Bankruptcy Court determined, and this Court affirmed, that this amount was a reasonable discount of the stream of annual payments into one lump sum amount of $250,000. Accordingly, this provision of the Compromise had simply carried out the discounting for present value which had been called for and required by the Plan. This provision therefore does not constitute a modification of the Plan.

In addition, the Bankruptcy Court, in its June 1, 2004 Confirmation Order, had specifically ordered that "any agreement contemplated pursuant to the terms of the [] Plan [is] hereby deemed authorized and approved . . ." June 1, 2004 Confirmation Order at 4 (Dkt. No. 14, Attach. 40). The Plan therefore anticipated agreements that would effectuate the terms of the Plan, and the previously contemplated and authorized agreements therefore do not constitute a modification of the Plan.

This case is similar to the Second Circuit's decision in In Re Johns-Manville Corporation, which held that the debtor's plan expressly granted the Trustee discretion, provided that his actions would constitute a "procedural, rather than substantive change." 920 F.2d 121, 128 (2d Cir. 1990). The two specific provisions at issue here similarly did not involve any substantive

changes, but rather accomplished the very objectives established in the Plan–liquidation of the 2% equity interest at fair market value and discounting of the estate's share of the consulting fee using present value methods.  Thus, the compromise proposed by the Trustee does not rise to the level of a plan modification and "[t]he substantive rights of the claimants remain unchanged." In Re Johns-Manville Corp., 920 F.2d at 129.

Debtors argue that the Bankruptcy Court's "July 7, 2007 decision constitutes an impermissible post confirmation modification" because it did not address a provision which the Trustee had "removed" allegedly "so that Asolare II, LLC could be enriched."  Appellants' Brief at 9.  This argument lacks merit.  As noted by the Bankruptcy Court, the Compromise did not "violate" or "remove" provisions of the Plan, but had merely selected to compromise only some of the provisions, while leaving others unaltered.  The other issues and arguments brought forth by the Debtors are beyond the scope of the issue on appeal and involve claims that Asolare II fraudulently transferred its claim or challenges to the agreement between BSB and Asolare. However, these arguments are not before the Court at this time.  Rather, this Court already determined in its prior decision that the Debtors failed to raise any issue regarding the perfection of Asolare II's security interest, that there was no fraud on the part of Asolare II, that the Bankruptcy Court's refusal to remove the Trustee was proper, and that the Bankruptcy Court did not err in refusing to compel compliance with the consulting agreement.  Reserve Capital Corp. v. Levine, No. 6:05-CV-00743, 2007 WL 329179 (N.D.N.Y. Jan. 30, 2007).  The only issue to be considered on remand and therefore on this appeal was whether the Compromise had constituted an impermissible modification of the Plan.  Debtors' attempt to re-litigate the alleged fraudulent transfer by Asolare II is inappropriate and need not be considered by the Court.

6

Because there was no impermissible modification of the Plan, the Court need not address whether the Plan had been substantially consummated or not.  See In re Johns-Manville Corp., 920 F.2d at 128.


## IV. CONCLUSION

Accordingly, it is hereby

**ORDERED**, that the Decision and Order of the United States Bankruptcy Court for the Northern District of New York (Gerling, Chief B.J.), entered on July 6, 2007, is **AFFIRMED**; and it is further

**ORDERED**, that the above-captioned appeal is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Order upon the parties to this action.

**IT IS SO ORDERED**.

DATED: March 13 2009
        Albany, New York

Lawrence E. Kahn
U.S. District Judge

7